POLK COUNTY V. A. M. PHILLIPS.

No. 793.  Decided May 18, 1899.

1.  Counties—Inquest—Autopsy—Liability to Physician.

Under article 1024a, Code of Criminal Procedure, authorizing employment of a physician to determine by an autopsy the "nature and character of the violence used," the inquiry is not limited to the cause of death and the violence causing it, but may extend to and include other circumstances attending the act and disclosing its moral quality, and determinable by such autopsy.  (Pp. 631, 632.)

2.  Same.

A county is liable for the services of a physician summoned by the magistrate to make an autopsy at an inquest on the body of one killed by a sheriff's posse, though the purpose of his examination and inquest was, not to determine whether deceased was killed by a gunshot wound, but whether, as indicated by his autopsy and conclusions therefrom as an expert, the deceased was standing or lying down when shot,—that having become a material issue.  (Pp. 630-632.)

QUESTION CERTIFIED from the Court of Civil Appeals for the First District in an appeal from Polk County.

C. L. Carter and A. C. Bullitt, for appellant.—As it is provided in article 1024a, Code of Criminal Procedure, that an autopsy may be held for the purpose of determining if death was occasioned by violence, a physician holding an autopsy for any other purpose can not recover against the county. Fears v. Nacogdoches County, 71 Texas, 337; Hallman v. Campbell, 57 Texas, 54; Morgan County v. Johnson, 29 Ind., 35; Code Crim. Proc., art. 1071; Penal Code, art. 10.

F. Campbell, for appellee.—The objects of an inquest are to ascertain, with as much certainty as possible, the cause, time, manner, and place of death of deceased, to collect and preserve the evidence in relation thereto, and to discover and bring to justice the criminal, if death of the deceased has been the result of crime.

GAINES, CHIEF JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District have certified the following question for our decision, viz:

"In the above case the questions stated below have arisen and are deemed material and essential to a proper decision of the case, and they are therefore certified for decision.

"On the 16th of February, 1897, an inquest was held in Polk County, by a justice of the peace of said county, upon the body of one W. W. Gatling, who was killed in said county by a constable and his posse, and at said inquest the appellee, in obedience to an order of said justice, attended said inquest and made an autopsy of the deceased, and he presented a bill of $25 for such services to the County Commissioners Court and said bill was rejected in toto by said court, whereupon he instituted suit in the Justice Court and recovered judgment against the county for

$10, and upon appeal to the District Court, the County Court of that county not having jurisdiction of such suits, the judgment was affirmed, and from the judgment of the District Court the county of Polk appealed to this court. There was no question at the time of the inquest that the deceased came to his death at the hands of the constable and his posse from gunshot wound, and that the constable at the time of the homicide held a warrant of arrest for the deceased, and that it was known to both the justice of the peace and to the appellee before the autopsy was made that the deceased came to his death from violence inflicted as above stated, and the justice caused the autopsy to be made for the purpose of determining whether the deceased was, at the time of the assault upon him, lying down, as testified to by his companion, or whether he was on his feet resisting his arrest with deadly weapons, as testified to by other witnesses. The appellee is a regular practicing physician and made the autopsy after he had been duly summoned for the purpose by the justice of the peace, and testified, as an expert, that the deceased, at the time he was shot, was on his feet with his arms raised. There was at the time a county physician for Polk County, but it being impracticable to secure his services, the appellee was engaged by the justice of the peace holding the inquest.

"Upon the foregoing statement we respectfully submit the following question: Was the county liable to the appellee for the services rendered in making the autopsy, under the law authorizing the employment of a regular practicing physician for certain purposes by a justice of the peace when holding an inquest?"

Article 1024a of the Code of Criminal Procedure provides, that "whenever an inquest is held to ascertain the cause of a death, the justice of the peace is hereby authorized, if he deems it necessary, to call in the county physician, or if there be no county physician, or if it be impracticable to secure his services, then some regular practicing physician, to make an autopsy in order to determine whether the death was occasioned by violence; and if so, the nature and character of the violence used; and the county in which such inquest and autopsy is held shall pay to the physician making such autopsy a fee of not less than ten nor more than fifty dollars, the excess over ten dollars to be determined by the county commissioners court after ascertaining the amount and nature of the work performed in making the autopsy."

The question may be solved by determining the meaning which is to be given to the words, "the nature and character of the violence used;" that is to say, by determining whether they are to be restricted to the ascertainment of the physical nature of the violence, or whether the meaning is to be so extended as to include other circumstances attending the act which may disclose its moral quality.

The object of the statute which provides for an inquest upon a dead body is to aid the enforcement of the law by the detection of crime, in case an offense has been committed. This is its sole purpose. It might be to the interest of science in most cases to ascertain whether a death

had resulted from poison or from natural causes, or whether it was produced by a gunshot wound or other physical injuries. But in many cases, the inquiry, if stopped at that point, would fall far short of accomplishing the purpose of the law. The fact that death had resulted from violence, and the further fact, for example, that the violence consisted of a blow upon the head, are but steps in ascertaining whether or not a crime has been committed. The blow may have characteristics other than those of a physical nature. It may have been accidental or it may have been intentional. It may have been willful and without justification or it may have been justifiable. In accomplishing the purpose of the inquest, it is as important to determine these latter characteristics of an act of violence which has led to a death as it is to determine the fact that there was violence and that death was its result.

We think the purpose for which the physician was brought in to make the examination of the dead body was a purpose contemplated by the statute under consideration, and we therefore answer the question certified in the affirmative.